# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

24-50627

Space Exploration Technologies Corporation,

*Plaintiff - Appellee,*

v.

National Labor Relations Board; Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board; Lauren M. McFerran, in her official capacity as the Chairman of the National Labor Relations Board; Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, in their official capacities as Board Members of the National Labor Relations Board; John Doe, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants - Appellants*

consolidated with

_____

24-40533

_____

Energy Transfer, L.P.; La Grange Acquisition, L.P.,

*Plaintiffs-Appellees*

v.

National Labor Relations Board; Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board; Lauren M. McFerran, in her official capacity as the Chairman of the National Labor Relations Board; Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, in their official capacities as Board Members of the National Labor Relations Board; John Doe, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants - Appellants*

consolidated with

_____

24-10855

_____

Aunt Bertha, doing business as Findhelp,

*Plaintiff - Appellee*

v.

National Labor Relations Board; Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board; Lauren M. McFerran, in her official capacity as the Chairman of the National Labor Relations Board; Marvin E. Kaplan, Gwynne A. Wilcox, and David M. Prouty, in their official capacities as Board Members of the National Labor Relations Board; John Doe, in their official capacity as an Administrative Law Judge of the National Labor Relations Board,

*Defendants – Appellants*

_____

**LA GRANGE'S RESPONSE BRIEF**

_____

Amber M. Rogers
HUNTON ANDREWS KURTH LLP
arogers@huntonak.com
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: 214-979-3000

December 11, 2024

Keenan Judge
HUNTON ANDREWS KURTH LLP
kjudge@huntonak.com
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: 214-695-9142

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

*Case No. 24-40533*, *Energy Transfer LP, et al. v. National Labor Relations Board, et al.*

Undersigned counsel certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case:

1. Energy Transfer LP ("Energy Transfer"), Plaintiff and Appellee. Energy Transfer does not have a parent company, and no publicly held corporation owns 10% or more of Energy Transfer's stock.

2. La Grange Acquisition, L.P. ("La Grange"), Plaintiff and Appellee. La Grange is a wholly-owned subsidiary of Energy Transfer.

3. National Labor Relations Board (the "NLRB" or the "Board"), a federal administrative agency, Defendant and Appellant.

4. Jennifer Abruzzo, in her official capacity as the General Counsel of the National Labor Relations Board, Defendant and Appellant.

5. Lauren M. McFerran, in her official capacity as Chairman of the National Labor Relations Board, Defendant and Appellant.

6. Marvin E. Kaplan, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Appellant.

7. Gwynne A. Wilcox, in her official capacity as Board Member of the National Labor Relations Board, Defendant and Appellant.

8. David M. Prouty, in his official capacity as Board Member of the National Labor Relations Board, Defendant and Appellant.

9. United States of America, appropriates funds for and assumes debts of Defendants and Appellants.

10. Hon. Jeffrey Vincent Brown, United States District Judge of the United States District Court for the Southern District of Texas, Galveston Division, who is presiding over the case below.

The following persons are identified as attorneys of record:

11. Amber M. Rogers, Attorney for Plaintiffs/Appellees.

12. Keenan Judge, Attorney for Plaintiffs/Appellees.

13. Tyler James Wiese, Attorney for Defendants/Appellants.

14. David Paul Boehm, Attorney for Defendants/Appellants.

15. Michael Samuel Dale, Attorney for Defendants/Appellants.

16. Christine Flack, Attorney for Defendants/Appellants.

17. Grace L. Pezzella, Attorney for Defendants/Appellants.

18. Paul A. Thomas, Attorney for Defendants/Appellants.

*s/Amber M. Rogers*
Amber M. Rogers

*Attorney of record for*
*Plaintiffs/Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Given the importance of the issues raised in this appeal, La Grange agrees that the matter should be set for oral argument and acknowledges that the Court has ordered expedited oral argument in this case. Dkt. 41-1 at 2.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS.................................................................................. iv

TABLE OF AUTHORITIES ............................................................................ vii

INTRODUCTION ........................................................................................1

COUNTERSTATEMENT OF JURISDICTION ....................................................2

COUNTERSTATEMENT OF THE ISSUE...........................................................3

COUNTERSTATEMENT OF THE CASE.............................................................3

I.  La Grange's operations .........................................................................3

II. The underlying administative proceeding ...........................................4

III.La Grange filed suit in district court to enjoin an unconstitutional proceeding...6

   A. La Grange files suit.......................................................................6

   B. Hearing and supplemental briefing................................................7

   C. Judge Brown's order......................................................................8

SUMMARY OF ARGUMENT ..........................................................................11

STANDARD OF REVIEW ...............................................................................13

ARGUMENT .................................................................................................13

I.  La Grange is entitled to a preliminary injunction because it is likely to succeed
   on the merits....................................................................................13

   A. NLRB ALJs are unconstitutionally insulated from removal.......................14

1. Legislative history of ALJs ...................................................14

2. The statutory role of NLRB ALJs ........................................15

3. The President's removal power .............................................16

4. NLRB ALJs' removal protections..........................................18

5. NLRB ALJs are inferior officers............................................19

6. NLRB ALJs are unconstitutionally insulated from removal...................20

7. *Jarkesy* further establishes that NLRB ALJs are unconstitutionally insulated from removal..............................................................23

B. NLRB Board Members are unconstitutionally insulated from removal. ......26

1. The statutory role of NLRB Board Members..........................................26

2. NLRB Board Members' removal protections .........................................27

3. NLRB Board Members are unconstitutionally insulated from removal. ..27

a. *Humphrey's Executor* does not apply because NLRB Board Members wield substantial executive authority. .................................................28

b. *Humphrey's Executor* does not apply because the NLRB is not a body of experts. ..........................................................30

c. *Humphrey's Executor* does not apply because the NLRB is not an independent agency. ..........................................................31

d. Extending *Humphrey's Executor* to the NLRB would contradict this Court's precedent. ..............................................32

4. The NLRB is wrong about "causal harm" being required. ......................35

C. La Grange will suffer immediate and irreparable harm absent injunctive relief. ....................................................................40

D. The balance of equities weigh in La Grange's favor, and an injunction is in the public's interest.........................................................42

II. The Norris-LaGuardia act does not apply. ........................................46

III. The potential remedy of severance does not render preliminary injunctive relief unavailable. .......................................................................50

CONCLUSION ...................................................................................56

CERTIFICATE OF SERVICE ..............................................................58

CERTIFICATE OF COMPLIANCE......................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABM Indus. Groups, LLC v. United States DOL*,
No. CV H-24-3353, 2024 WL 4642962 (S.D. Tex. Oct. 30, 2024) ............50, 52

*Ares Collective Group, LLC v. NLRB*,
No.CV-24-00517-TUC-SHR, slip op. (D. Ariz. Oct. 25, 2024) .......................42

*Axon Enter. Inc. v. FTC*,
452 F. Supp. 3d 882 (D. Ariz. 2020) .................................................................38

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023).......................................................................................*passim*

*Ayotte v. Planned Parenthood of N. New England*,
546 U.S. 320 (2006)...................................................................................55, 56

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)........................................................................................52

*BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers—Transp. Div.*,
973 F.3d 326 (5th Cir. 2020) ...........................................................................49

*Bowsher v. Synar*,
478 U.S. 714 (1986).........................................................................................28

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) ......................................................12, 40, 42, 43

*Calcutt v. FDIC*,
37 F.4th 293 (6th Cir. 2022) ...........................................................................38

*Chicago & N.W. Ry. Co. v. United Transp. Union*,
402 U.S. 570 (1971).........................................................................................46

*Cochran v. SEC*,
20 F.4th 194 (5th Cir. 2021) (en banc) ...........................................37, 38, 41, 42

vii

*Cochran v. SEC*,
No. 4:19-CV-066-A, 2019 WL 1359252 (N.D. Tex. Mar. 25, 2019) ...............38

*Collins v. Mnuchin*,
896 F.3d 640 (5th Cir. 2018) ...........................................................29

*Collins v. Yellen*,
594 U.S. 220 (2021)...............................................................*passim*

*Columbia River Packers Ass'n v. Hinton*,
315 U.S. 143 (1942)......................................................................47

*Cmty. Fin. Servs. Ass'n of America, Ltd. v. CFPB*,
51 F.4th 616 (5th Cir. 2022) .................................................35, 36, 37

*Consumers' Rsch. v. CPSC*,
91 F.4th 342 (5th. Cir. 2024) .....................................................29, 33

*In re Cont'l Airlines, Inc.*,
484 F.3d 173 (3d Cir. 2007) ............................................................48

*Cortes v. NLRB*.,
No. CV 23-2954, 2024 WL 1555877 (D.D.C. Apr. 10, 2024)..........................38

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) ............................................................44

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
661 F.2d 328 (5th Cir. 1981) ............................................................40

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024) ............................................................40

*Dennis Melancon, Inc. v. City of New Orleans*,
703 F.3d 262 (5th Cir. 2012) ......................................................13, 40

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975).....................................................................50

*Edmond v. United States*,
520 U.S. 651 (1997).....................................................................19

*Elrod v. Burns*,
427 U.S. 347 (1976)......................................................................................40

*Exela Enter. Sols., Inc. v. NLRB*,
32 F.4th 436 (5th Cir. 2022) ...........................................30, 32, 33, 35

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010)...............................................................................*passim*

*Humphrey's Executor v. United States*,
295 U.S. 602 (1935)...............................................................................*passim*

*Illumina, Inc. v. FTC*,
88 F.4th 1036 (5th Cir. 2023) ...........................................................33, 34

*Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*,
457 U.S. 702 (1982)......................................................................................47

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022), *aff'd*, 144 S. Ct. 2117 (2024).......................*passim*

*Kerwin v. Trinity Health Grand Haven Hosp.*,
No. 1:24-cv-445, slip op. (W.D. Mich. Oct. 25, 2024) ......................................38

*Leachco, Inc. v. CPSC*,
103 F.4th 748 (10th Cir. 2024) ......................................................................41

*League of Women Voters of United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ..........................................................................42

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024)...............................................................................30

*Louisiana v. Biden*,
55 F.4th 1017 (5th Cir. 2022) ......................................................................13

*Lucia v. SEC*,
585 U.S. 237 (2018)...............................................................................*passim*

*Lujan v. U.S. Dep't of Educ.*,
664 F. Supp. 3d 701 (W.D. Tex. 2023) ............................................................42

ix

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
760 F.2d 618 (5th Cir. 1985) ..............................................................51

*Myers v. United States*,
272 U.S. 52 (1926)..................................................................17, 21

*New York v. United States*,
505 U.S. 144 (1992)..............................................................52

*Nken v. Holder*,
556 U.S. 418 (2009)..............................................................42

*Muffley ex rel. NLRB v. Spartan Mining Co.*,
570 F.3d 534 (4th Cir. 2009) ..............................................34

*Noah's Ark Processors, LLC*,
372 N.L.R.B. No. 80 ...........................................................35

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
529 F.3d 303 (5th Cir. 2008) ..............................................13

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
734 F.3d 406 (5th Cir. 2013) ..............................................45

*Seila L. LLC v. CFPB*,
591 U.S. 197 (2020).........................................................*passim*

*Space Expl. Technolo-Gies Corp. v. NLRB.*,
No. W-24-CV-00203-ADA, 2024 WL 3512082 (W.D. Tex. July
23, 2024) ..............................................................................53

*Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*,
No. 24-09016, 2024 WL 4563789 (D.N.J. Oct. 24, 2024)................42

*Texas All. for Retired Ams. v. Hughs*,
976 F.3d 564 (5th Cir. 2020) ..............................................43

*Topletz v. Skinner*,
7 F.4th 284 (5th Cir. 2021) ..................................................13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................29

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021)..........................................................................................52

*United States v. Nat'l Treasury Emps. Union*,
  513 U.S. 454 (1995)......................................................................................56

*United States v. Reese*,
  92 U.S. 214 (1875).........................................................................................55

*United Steelworkers v. Bishop*,
  598 F.2d 408 (5th Cir. 1979) ....................................................................48, 49

*Valentine v. Collier*,
  956 F.3d 797 (5th Cir. 2020) .........................................................................44

*Virginia v. Am. Booksellers Ass'n, Inc.*,
  484 U.S. 383 (1988)......................................................................................56

*Wenner v. Tex. Lottery Comm'n*,
  123 F.3d 321 (5th Cir. 1997) .........................................................................50

*WestRock Servs., Inc.*,
  366 N.L.R.B. No. 157, slip op. (Aug. 6, 2018) ........................................20, 25

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)...........................................................................................13

*YAPP USA Auto. Sys., Inc. v. NLRB.*,
  No. 24-1754, 2024 WL 4489598 (6th Cir. Oct. 13, 2024)...........................38, 41

**Statutes**

5 U.S.C. § 554(d) ................................................................................................14

5 U.S.C. § 1202 .............................................................................................18, 24

5 U.S.C. § 3105................................................................................................14, 18

5 U.S.C. § 7521.......................................................................................15, 18, 23, 24

15 U.S.C. § 41 .....................................................................................................34

15 U.S.C. § 49 .....................................................................................................33

15 U.S.C. § 53 ..........................................................................33

15 U.S.C. § 2053(c) ................................................................34

28 U.S.C. § 1292(a)(1) ..............................................................2

28 U.S.C. § 1331 .......................................................................2

29 U.S.C. § 113 ........................................................................46

29 U.S.C. § 153 ............................................................26, 27, 34

29 U.S.C. § 156 ........................................................................26

29 U.S.C. § 157 ........................................................................26

29 U.S.C. § 159 ........................................................................26

29 U.S.C. § 160 ..................................................................15, 26

29 U.S.C. § 161 ........................................................................27

National Labor Relations Act ...........................................*passim*

Norris-LaGuardia Act ..................................................3, 46, 47

**Regulations**

5 C.F.R. § 930.204 ..................................................................19

5 C.F.R. § 1200.1 ....................................................................54

29 C.F.R. § 101.10 ..................................................................25

29 C.F.R. § 101.11 ..................................................................25

29 C.F.R. § 101.12 ..................................................................25

29 C.F.R. § 102.34 ..................................................................15

29 C.F.R. § 102.35 ...............................................15, 16, 19, 25

29 C.F.R. § 102.45 ..................................................................25

29 C.F.R. § 102.48 ............................................................16, 25

**Constitutional Provisions**

U.S. Const. art. II, § 3 ....................................................1, 16

**Other Authorities**

1 Annals of Cong. 463 (1789) ...........................................28

Aditya Bamzai & Saikrishna B. Prakash, *The Executive Power of Removal*, 136 Harv. L. Rev. 1756 (2023)...........................17

Hiba Hafiz, *Economic Analysis of Labor Regulations*, 2017 Wis. L. Rev. 1115 (2017) .......................................................30

Linda D. Jellum, *You're Fired! Why the ALJ Multi-Track Dual Removal Provisions Violate the Constitution & How to Fix Them*, 26 Geo. Mason L. Rev. 705 (2019) .............................15, 18

Linda D. Jellum & Moses M. Tincher, *The Shadow of Free Enterprise: The Unconstitutionality of the Securities & Exchange Commission's Administrative Law Judges*, 70 SMU L. Rev. 3 (2017) .......................................................17

Matthew M. Bodah & Martin R. Schneider, *Politics, Ideology, and Adjudication: The German Federal Labor Court and the U.S. National Labor Relations Board*, 36 Comp. Lab. L. & Pol'y J. 1 (2014) ............................31

NLRB, *Legislative History of the National Labor Relations Act of 1935* (1949) ...................................................................54

NLRB Division of Judges, *Bench Book, An NLRB Trial Manual* (2024).....................................................................15, 16

Slade Mendenhall & Brian Underwood, *To Sever or Not to Sever: Mixed Guidance from the Roberts Court*, 69 Drake L. Rev. 273 (2021) .........................................................................53

Walker J. Gray, *"Dependent" Independent Agencies: How Humphrey's Executor Envisioned Independent Agencies and the NLRB's Inconsistency with This Vision*, 53 Cumb. L. Rev. 77 (2023).....................................................................31, 32

William N. Cooke & Frederick H. Gautschi, *Political Bias in NLRB Unfair Labor Practice Decisions*, 35 Indus. & Lab. Rel. Rev. 539 (1982) ................................................................................................................. 32

# INTRODUCTION

The United States Constitution requires that the President "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The current structure of the NLRB unlawfully obstructs the President from fulfilling this constitutional mandate. Congressional attempts to ensure that the NLRB's Board Members and Administrative Law Judges ("ALJ") remain independent and free from political control through the use of removal protections have done exactly that. But in so doing, Congress has unconstitutionally rendered these powerful executive officers unaccountable to the President in their execution of the law.

Energy Transfer and its subsidiary and employing entity La Grange (collectively, "La Grange") brought this lawsuit and sought a preliminary injunction to avoid suffering the irreparable harm of being subjected to constitutionally defective proceedings before the NLRB. The district court properly granted La Grange's request for injunctive relief to maintain the status quo and prevent La Grange from suffering irreparable harm while the courts address the merits of its constitutional claims.

This Court has no compelling reason to depart from the district court's conclusion. La Grange satisfies all of the elements required to justify its request for preliminary injunctive relief. Binding precedent dictates that La Grange is likely to succeed on the merits of its constitutional claims that the NLRB's ALJs and Board

Members are unconstitutionally insulated from removal in contravention of Article II of the Constitution. La Grange will suffer irreparable harm in the absence of preliminary injunctive relief because it will be forced to undergo unconstitutional administrative proceedings before unaccountable agency officials. The balance of equities undoubtedly tips in La Grange's favor because it stands to suffer deprivation of its constitutional rights while the Board stands to lose nothing. Lastly, the public interest is served by ensuring the NLRB's structure and proceedings comply with the requirements of the Constitution.

## COUNTERSTATEMENT OF JURISDICTION

The district court had federal question jurisdiction under 28 U.S.C. § 1331 to consider each of the claims La Grange asserted against the Board. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 182, 195–96 (2023) (recognizing that structural constitutional challenges to agency proceedings arise under § 1331). This Court has appellate jurisdiction over the removal-restriction claims upon which the district court granted preliminary injunctive relief to La Grange in this appeal pursuant to 28 U.S.C. § 1292(a)(1).[1]

---

[1] Though the district court did not address La Grange's arguments regarding Board Members' unconstitutional removal restrictions below, La Grange raises these arguments in response to the NLRB fully briefing the issue (NLRB Br. at 40–48) because it remains an independent basis that justifies ordering preliminary injunctive relief for La Grange. La Grange does not reassert the Seventh Amendment or due process claims it brought in this lawsuit because they were neither addressed by the district court's decision or briefed by the NLRB.

Contrary to the Board's assertion, the Norris-LaGuardia Act does not "jurisidctionally bar[]" the district court from issuing injunctive relief in this case. Dkt. 65-1 ("NLRB Br.") at 1. The Norris-LaGuardia Act is inapplicable because it regulates injunctions involving or growing out of labor disputes, not injunctions issued in connection with unconstitutionally structured federal agency procedings.

## COUNTERSTATEMENT OF THE ISSUE

Whether the NLRB's administrative proceeding against La Grange should be preliminarily enjoined pending final adjudication of this action.

## COUNTERSTATEMENT OF THE CASE

### I. La Grange's operations

La Grange is an indirect subsidiary and employing entity of Energy Transfer. ROA.24-40533.91 at ¶ 6. Energy Transfer is a publicly traded limited partnership that owns and operates one of the largest and most diversified portfolios of energy assets in the United States, with a strategic footprint in all of the major domestic production basins. ROA.24-40533.91 at ¶ 7. Energy Transfer's core operations include complementary natural gas midstream; intrastate and interstate transportation and storage assets; crude oil, natural gas, and natural gas liquids; refined product transportation and terminalling assets; NGL fractionation; and various acquisition and marketing assets. ROA.24-40533.91 at ¶ 8. Energy Transfer has a facility in Mont Belvieu, Texas. ROA.24-40533.91 at ¶ 9. Energy Transfer's fractionators at Mont Belvieu process demethanized mix received from multiple

sources, including Energy Transfer's Lone Star Express, Justice, and White Cliffs pipelines as well as third-party pipelines. ROA.24-40533.91 at ¶ 10. The Mont Belvieu facility's storage capabilities include natural gas liquids, refined products, and specialty products. ROA.24-40533.91 at ¶ 11. The storage facilities are connected to third-party pipelines, refineries, petrochemical facilities, other fractionation facilities, and the Energy Transfer Nederland Terminal via its Mont Belvieu to Nederland Pipeline system. ROA.24-40533.92 at ¶ 12.

## II.   The underlying administrative proceeding

The Charging Party in the underlying unfair labor practice charge was employed by La Grange and worked as a "Fractionator Operator" at the Mont Belvieu facility.[2] ROA.24-40533.92 at ¶ 13. On September 26, 2022, following several incidents of insubordination and disruptions to facility operations taken on his own behalf, La Grange transferred Charging Party from his maintenance position as a Fractionator Operator to an operations-focused role. ROA.24-40533.92 at ¶ 14. Charging Party did not receive any change in title, pay, benefits, or hours, and Charging Party admitted the same. ROA.24-40533.92 at ¶ 15. On November 1, 2022, Charging Party filed an unfair labor practice charge with the NLRB regarding the

---

[2] The unfair labor practice charge at issue is Case No. 16-CA-306440. La Grange will not identify Charging Party's name to maintain his privacy.

transfer, alleging he was "demoted" in retaliation for engaging in protected concerted activity. ROA.24-40533.94 at ¶ 4.

On December 7, 2022, La Grange terminated Charging Party's employment for continued insubordination, disruption, and harassment of coworkers and managers via frequent electronic communications. ROA.24-40533.92 at ¶ 18. He did not take these actions on behalf of any coworkers; this was individualized behavior relating only to the Charging Party. ROA.24-40533.92 at ¶ 18. On December 9, 2022, Charging Party filed an amended unfair labor practice charge regarding the termination, claiming his employment was terminated in retaliation for engaging in protected concerted activity and for filing an unfair labor practice charge. ROA.24-40533.94 at ¶ 6. On December 19, 2022, the NLRB sought La Grange's evidence and position in response to the above-referenced charges. ROA.24-40533.94 at ¶ 7. On January 5, 2023, La Grange submitted its evidence and position statement in response. ROA.24-40533.94 at ¶ 8. On February 7, 2023, Charging Party filed a second amended charge. ROA.24-40533.94 at ¶ 9. On May 31, 2023, Charging Party filed a third amended charge. ROA.24-40533.94 at ¶ 10. Almost six months later, on November 15, 2023, the NLRB sought La Grange's supplemental position in response to the February 7 and May 31 amended charges. ROA.24-40533.94 at ¶ 11. On November 20, 2023, La Grange submitted its position statement in response. ROA.24-40533.94 at ¶ 12.

On March 7, 2024, the Regional Director for Region 16 issued a complaint and notice of hearing against La Grange. ROA.24-40533.95 at ¶ 19. The Regional Director set the hearing to take place on July 30, 2024 at Region 16's field office in Houston, Texas. ROA.24-40533.95 at ¶ 20. The Regional Director did not consult the parties prior to setting the hearing date. ROA.24-40533.95 at ¶ 21. On March 21, 2024, La Grange answered the complaint, denying all allegations. ROA.24-40533.95 at ¶ 24. On April 26, 2024, La Grange filed a motion to postpone the hearing due to pre-scheduled conflicts for undersigned counsel and La Grange's corporate representative. ROA.24-40533.95 at ¶ 25. La Grange asked for a three-week extension—a reasonable and brief amount of time compared to the 16 months the Region took to issue the complaint. ROA.24-40533.96 at ¶ 26. On April 26, 2024, the Regional Director denied the motion, leaving the hearing scheduled for July 30, 2024. ROA.24-40533.96 at ¶ 27–28.

## III. La Grange filed suit in district court to enjoin an unconstitutional proceeding.

### A. La Grange files suit

La Grange filed suit on June 27, 2024. ROA.24-40533.9–25. La Grange alleged in its complaint that (1) the NLRB's ALJs and Board Members are unconstitutionally insulated from removal in contravention of Article II of the Constitution, (2) the NLRB's ALJs adjudicate private rights without a jury trial in violation of the Seventh Amendment to the Constitution, and (3) the Board violates

the separation of powers required by the Fifth Amendment to the Constitution because it exercises executive, judicial, and legislative power. ROA.24-40533.9–25.

On July 3, 2024, La Grange moved the district court for a preliminary injunction, requesting that the court stay or enjoin the underlying administrative proceeding to prevent La Grange from suffering immediate and irreparable harm. ROA.24-40533.72–89.

### B.     Hearing and supplemental briefing

The parties briefed the motion, and the district court held a hearing on July 16, 2024. ROA.24-40533.72–89, 114–53, 167–77, 331–63. At the beginning of the hearing, Judge Brown informed the parties that, after reviewing the parties' briefing, *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd*, 144 S. Ct. 2117 (2024), "seem[ed] to decide" the ALJ removal argument in La Grange's favor. ROA.24-40533.334. During the Board's argument, it likewise conceded that *Jarkesy* "likely decides this issue . . . as far as the merits go." ROA.24-40533.353. Judge Brown further recognized and echoed La Grange's argument that the Supreme Court held in *Axon* that when a party is subjected to a constitutionally illegitimate proceeding, the proceeding itself may constitute irreparable harm. ROA.24-40533.347 (explaining that "in *Axon* the court said the proceeding that's already happened cannot be undone and that sure sounds like irreparable harm to me.").

Following the hearing, the parties submitted supplemental letter briefs to the district court clarifying their positions on issues Judge Brown indicated he was particularly interested in. ROA.24-40533.183–90, 196–202. These supplemental briefs addressed the district court's jurisdiction to hear the case, La Grange's ability to make the requisite irreparable harm showing, and the parties' diverging positions regarding the application of *Collins v. Yellen*, 594 U.S. 220 (2021).

## C.    Judge Brown's order

On July 29, 2024, the district court issued a written order granting La Grange's motion and enjoining the underlying administrative proceeding pending the resolution of this case. ROA.24-40533.310–22. In its order, the district court explained that La Grange "will likely show that the removal protections afforded to NLRB ALJs are unconstitutional" in light of this Court's precedent in *Jarkesy*.[3] ROA.24-40533.315. The court explained that the Fifth Circuit found two layers of statutory removal protections for Securities and Exchange Commission ("SEC") ALJs unconstitutional in *Jarkesy* and observed that "[t]he same holds true here." ROA.24-40533.313–14. Specifically, it stated that "[t]he removal provisions that protect NLRB ALJs are indistinguishable from those that protect SEC ALJs." ROA.24-40533.314. The court observed that the NLRB "offered no distinction

---

[3] The district court's written order clarified that La Grange's "ALJ-removal argument alone" was sufficient to entitle La Grange to its requested relief, so the court did not need to reach La Grange's remaining arguments. ROA.24-40533.313.

between the removal protections at issue and those held to be unconstitutional in *Jarkesy*," highlighting that the NLRB merely "note[d] 'its disagreement'" with the *Jarkesy* decision. ROA.24-40533.314. On this basis, the court concluded that La Grange "will likely show that the removal protections afforded to NLRB ALJs are unconstitutional." ROA.24-40533.315.

The court further rejected the NLRB's contention that La Grange should be required to show "that the President has sought to remove the ALJ assigned to this case" pursuant to *Collins*, finding instead that La Grange satisfied *Collins*' requirement as it has been interpreted by this Court's precedent. ROA.24-40533.315–18. The decision emphasized that the "'key inquiry' under *Collins* is whether the challenged constitutional infirmity 'cause[d] harm to the challenging party.'" ROA.24-40533.316. The court concluded that La Grange "readily satisfied" *Collins*' causal harm requirement by showing that it faced the injury of "having to appear before an unaccountable ALJ." ROA.24-40533.317–18. In so doing, the court relied on Fifth Circuit precedent to distinguish La Grange's alleged harm from the harm at issue in "most removal-restriction cases, [where] a plaintiff seeks to invalidate an action that an unconstitutionally insulated official has already taken." ROA.24-40533.316–17. The key distinction, the court recognized, is that La Grange was not seeking to void past conduct because the NLRB ALJ "ha[d] yet to take any action whatsoever." ROA.24-40533.317.

The district court likewise agreed that La Grange sufficiently demonstrated that it would suffer irreparable harm absent injunctive relief because the harm it alleged could not "be undone through monetary remedies." ROA.24-40533.319. The court adopted La Grange's application of *Axon*, rejecting the Board's insistence that the decision is limited to questions of jurisdiction. ROA.24-40533.320.

On the merged third and fourth preliminary injunction elements, the court held that granting La Grange injunctive relief was in the public interest and that the balance of equities favored La Grange. ROA.24-40533.321–22. Specifically, the court echoed the concerns La Grange raised in its briefing regarding the public having a significant interest in maintaining the constitutionality of administrative processes enforced by the Executive Branch. ROA.24-40533.321. It also rejected the Board's argument that granting La Grange an injunction "would render the National Labor Relations Act . . . effectively toothless," emphasizing that the effect of the injunction was "directed only at the parties to this action, and is only temporary." ROA.24-40533.321.

Finally, the court rejected the Board's argument that "sever[ing] any offending removal provisions from the statute" would be a more appropriate remedy than issuing an injunction. ROA.24-40533.319. It explained that this alleged remedy "would not provide La Grange any relief from the impending harm it [was] set to

experience on October 29 because such a declaration would not take place until final judgment." ROA.24-40533.319.

The NLRB provided the district court and La Grange with notice of its appeal of the district court's decision to this Court on August 16, 2024. ROA.24-40533.324–26.

## SUMMARY OF ARGUMENT

The district court correctly granted La Grange's request for a preliminary injunction against the NLRB to halt its unconstitutional administrative proceedings. La Grange satisfies all four elements required for a preliminary injunction, so this Court should affirm the district court's decision.

La Grange is likely to succeed on the merits of its constitutional challenges to the NLRB's structure and the removal protections applicable to the NLRB's ALJs and Board Members.

First, this Court's precedent in *Jarkesy* conclusively settles that the NLRB ALJs' multiple layers of for-cause removal protections are unconstitutional. NLRB ALJs are subject to removal restrictions that render them removable only for good cause as determined by the Merit Systems Protection Board ("MSPB"), whose members themselves are only removable for inefficiency, neglect of duty, or malfeasance in office. This creates multiple layers of for-cause removal protections between the President and NLRB ALJs that prevent the President from fully

exercising his authority under Article II of the Constitution. NLRB ALJs' multiple layers of removal protections are indistinguishable from those that this Court found unconstitutional in *Jarkesy*, and there are no considerations that would justify a different conclusion.

Second, the Board Members' insulation from at-will removal by the President through statutory removal restrictions violates Article II of the Constitution. The narrow exceptions to the President's removal powers outlined in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), do not apply and should not be extended to the novel situation of the NLRB's unique structure, which is distinct from the structure of the agencies *Humphrey's Executor* has been held to apply to.

In the absence of injunctive relief, La Grange will suffer immediate harm. Should this Court reverse the district court's decision, La Grange will be forced to participate in unconstitutional administrative proceedings before unaccountable agency officials. "[S]ubjection to an illegitimate proceeding, led by an illegitimate decisionmaker" is a "'here-and-now injury' . . . [that] is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191 (internal citation omitted).

The balance of equities and the public interest favor La Grange because there is no governmental or public interest in permitting agencies to conduct unconstitutional proceedings. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

Accordingly, this Court should affirm the district court's decision granting La Grange's motion for a preliminary injunction.

## STANDARD OF REVIEW

The grant of a preliminary injunction is reviewed "for abuse of discretion, with any underlying legal determinations reviewed *de novo* and factual findings for clear error." *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021) (citing *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 267 (5th Cir. 2012)). "This Court reviews questions of subject matter jurisdiction *de novo*." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 306 (5th Cir. 2008).

## ARGUMENT

**I.      La Grange is entitled to a preliminary injunction because it is likely to succeed on the merits.**

A court may order a preliminary injunction when a movant shows that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of the injunction, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). The district court correctly concluded that La Grange meets all four factors.

### A. NLRB ALJs are unconstitutionally insulated from removal.

#### 1. *Legislative history of ALJs*

The Administrative Procedure Act ("APA") authorizes agencies, including the NLRB, to conduct formal, in-house administrative proceedings, or adjudications, before ALJs. 5 U.S.C. § 3105. In the early nineteenth century, prior to the enactment of the APA, agencies used what were referred to as "examiners" to preside over hearings. Linda D. Jellum & Moses M. Tincher, *The Shadow of Free Enterprise: The Unconstitutionality of the Securities & Exchange Commission's Administrative Law Judges*, 70 SMU L. Rev. 3, 11 (2017). Examiners were not independent, as the agencies they worked for controlled their assignments, compensation, promotions, and continued employment. *Id.* Legal commentators raised concerns regarding these examiners' lack of independence and their related inability to decide cases fairly and impartially. *Id.* at 12. When the APA was enacted in 1946, Congress sought to address these issues through the provisions that would create ALJs. *Id.* at 13.

First, Congress ensured that the APA prohibited ALJs from being responsible to, or subject to supervision by, individuals performing investigative or prosecutorial functions in order to prevent agency officials from acting as lawmaker, investigator, prosecutor, and jury in the same action. *Id.* (citing 5 U.S.C. § 554(d)). Additionally, Congress provided for the independence of ALJs by removing agencies' control over their hiring, case assignment, compensation, discipline, supervision, and removal.

*See* Linda D. Jellum, *You're Fired! Why the ALJ Multi-Track Dual Removal Provisions Violate the Constitution & How to Fix Them*, 26 Geo. Mason L. Rev. 705, 712 (2019); 5 U.S.C. § 7521(a) (providing that "[a]n action may be taken against an administrative law judge . . . only for good cause established and determined by the Merit Systems Protection Board"). Thus, if agencies wanted to remove any of their ALJs, they would be required to make their recommendation to the MSPB, which was then tasked with determining whether good cause existed for the ALJ's removal.

### 2. *The statutory role of NLRB ALJs*

The National Labor Relations Act ("NLRA") vests the NLRB with final authority to adjudicate allegations that an employer or union has committed an unfair labor practice. 29 U.S.C. § 160. The NLRB adjudicates these disputes primarily through hearings before ALJs. 29 C.F.R. § 102.34; NLRB Division of Judges, *Bench Book, An NLRB Trial Manual* § 2-100 (2024). Broadly, NLRB ALJs are tasked with "inquir[ing] fully into the facts" to determine "whether the Respondent has engaged in or is engaging in an unfair labor practice." 29 C.F.R. § 102.35(a); NLRB Division of Judges, *supra*, at § 2-300.

ALJs assume significant authority to fulfill this mandate, including, among other things, administering oaths and affirmations; issuing subpoenas; ruling upon petitions to revoke subpoenas; receiving relevant evidence; taking or causing

deposition to be taken; regulating parties' hearing conduct, including excluding persons or attorneys from the hearing for contemptuous conduct; holding settlement conferences; ruling on motions; approving stipulations of fact; calling and examining witnesses; and making and filing decisions containing findings of fact and conclusions of law with the Board. *See* 29 C.F.R. § 102.35(a) (describing duties and powers of ALJs); NLRB Division of Judges, *supra*, at § 2-300. Where the parties to a dispute do not file exceptions to an ALJ's decision, it will "automatically become the decision and order of the Board and become its findings, conclusions, and order." 29 C.F.R. § 102.48.

### 3. *The President's removal power*

Article II of the Constitution provides that the President must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The President does not "fulfill that responsibility alone" but is instead expected to "rely on subordinate officers for assistance." *Seila L. LLC v. CFPB*, 591 U.S. 197, 203–04 (2020). The Constitution "gives [the President] the power to [execute the laws]," including by granting the President "the authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010). The Supreme Court has recognized that, "[w]ithout such power, the President could not be held fully accountable for discharging his own responsibilities" because "the buck would stop somewhere else." *Id*. at 514.

Congressional recognition of the President's constitutional power of removal can be traced back to the Decision of 1789, a debate in the United States House of Representatives that resulted in many politicians, scholars, and judges understanding that Congress endorsed the view that the Constitution granted the President the power to remove executives. *See* Aditya Bamzai & Saikrishna B. Prakash, *The Executive Power of Removal*, 136 Harv. L. Rev. 1756, 1773–76 (2023) (describing the 1789 House of Representatives refusing to endorse a bill that appeared to contradict the "House majority belie[f] that the President had a constitutional power to remove").

The Supreme Court explicitly confirmed this understanding and underscored the importance of the President's removal power in an early twentieth century landmark decision. *See Myers v. United States*, 272 U.S. 52, 163–64 (1926). Specifically, the Court held in *Myers* that Article II of the Constitution "grants to the President the executive power of the government . . . including the power of appointment and removal of executive officers—a conclusion confirmed by his obligation to take care that the laws be faithfully executed." *Id*. The Court went on to explain that restricting "the President's power of removal . . . would make it impossible for the President . . . to take care that the laws be faithfully executed." *Id*. at 164. Since *Myers*, the Supreme Court has repeatedly reinforced this "settled and well understood construction of the Constitution." *See Seila L.*, 591 U.S. at 214.

### 4. *NLRB ALJs' removal protections*

NLRB ALJs are subject to multiple layers of for-cause protection from removal. First, NLRB ALJs—who are appointed by the NLRB pursuant to 5 U.S.C. § 3105—may be removed "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). Should the NLRB wish to remove one of its ALJs, it would be required to file a petition with the MSPB, which would then conduct a formal hearing. *Id*. These hearings are conducted before ALJs from the MSPB, and the MSPB ALJs' decisions are then subject to approval by the members of the MSPB. But in addition to this protection, the members of the MSPB are themselves removable by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202.

This creates three layers of for-cause protection insulating NLRB ALJs from removal by the President. *See* Jellum, *supra*, at 714 (explaining that "all ALJs have potentially three levels of for-cause removal protection: their own, the MSPB ALJ's protection, and the members of the MSPB's protection"). If the President wished to remove an NLRB ALJ, he or she would be restricted from doing so by each of the three separate barriers posed by these removal protections.

## 5.     *NLRB ALJs are inferior officers.*

NLRB ALJs are inferior officers that exercise "significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 585 U.S. 237, 245 (2018). In *Lucia*, the Court concluded that SEC ALJs were "Officers of the United States," as opposed to "mere employees," due to the significant authority they exercise. *Id*. at 244–49. Specifically, the Court reasoned that SEC ALJs must be officers because they receive career appointments created by statute; are equipped with the authority to ensure fair and orderly adversarial hearings, including taking testimony, receiving evidence, and examining witnesses at hearing, as well as taking pre-hearing depositions; rule on the admissibility of evidence; have the power to enforce compliance with discovery orders; may punish contemptuous conduct; and issue decisions containing factual findings and legal conclusions, which may become final if the SEC declines to review a decision. *Id*. at 248–49. NLRB ALJs are subject to appointment by the same framework as SEC ALJs. 5 C.F.R. § 930.204. Further, as set forth herein, NLRB ALJs are equipped with and exercise the same authority as SEC ALJs that the Court's *Lucia* decision was based on. *See supra*, Argument, Section I(A)(2); 29 C.F.R. § 102.35(a).

Like SEC ALJs, NLRB ALJs are inferior, rather than principal officers. In *Edmond v. United States*, 520 U.S. 651, 662–63 (1997), the Supreme Court set forth that "[w]hether one is an 'inferior' officer depends on whether he has a superior"

and whether the putative officer's "work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." The Court explained in *Lucia* that SEC ALJs are inferior officers, acknowledging that they could be appointed by the SEC as a head of department, as opposed to appointment by the President with the advice and consent of the Senate, which is required for principal officers. 585 U.S. at 244 n.3. NLRB ALJs are likewise appointed by the Board, which is responsible for directing and overseeing the ALJs. *WestRock Servs., Inc*., 366 N.L.R.B. No. 157, slip op. at 2 (Aug. 6, 2018). Further, the NLRB has admitted that *Lucia* "supports a determination that Board judges, like SEC judges, are inferior officers." *Id*. at 1. Accordingly, the Supreme Court's holding in *Lucia* applies with equal force to NLRB ALJs, who are also inferior officers.

### 6. *NLRB ALJs are unconstitutionally insulated from removal.*

In *Free Enterprise Fund*, the Supreme Court considered for the first time whether separate layers of for-cause removal protections could constitutionally be combined to insulate inferior officers from removal by the President. 561 U.S. at 483–84. Framing the issue in other words, the Court asked, "[m]ay the President be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States?" *Id*.

The officials at issue in *Free Enterprise Fund* were the members of the Public Company Accounting Oversight Board ("PCAOB"), an agency subject to oversight by the SEC. *Id*. at 484. The legislation creating the PCAOB provided that the SEC could not remove PCAOB members at will, "but only for good cause shown, in accordance with certain procedures." *Id*. at 486 (internal quotations omitted). However, the SEC Commissioners themselves could not be removed by the President at will, but instead only for "inefficiency, neglect of duty, or malfeasance in office." *Id*. at 487. This created two layers of for-cause protections insulating the PCAOB members from removal by the President.

The Court held that "multilevel protection from removal is contrary to Article II's vesting of the executive power in the President [because] [t]he President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Id*. at 484 (reasoning that, where an officer enjoys more than one level of good-cause protection, "the President cannot remove [the] officer . . . even if the President determines that the officer is neglecting his duties or discharging them improperly."). The Court anchored its *Free Enterprise Fund* holding in its nearly century-old *Myers* decision, wherein the Court emphasized the President's constitutional responsibility of executive oversight and explained that the President must have some "power of removing those for whom he can not continue to be responsible." *Id*. (citing *Myers*, 272 U.S. at 117).

The Court distinguished prior precedent in which it upheld "limited restrictions on the President's removal power" on the grounds that those prior cases involved "only one level of protected tenure separat[ing] the President from an officer exercising executive power." *Id*. at 493–95. Conversely, the removal restrictions applicable to PCAOB members, who the Court determined to be inferior officers,[4] protected the members from removal except for good cause and "withdr[ew] from the President any decision on whether that good cause exist[ed]." *Id*. at 495. This structure, the Court reasoned, "stripped [the President] of the power [the Court's] precedents have preserved" and "impaired" the President's "ability to execute the laws." *Id*. at 496.

The dual-layer removal protections applicable to NLRB ALJs are precisely the types of protections the Supreme Court deemed unconstitutional in *Free Enterprise Fund*. The ALJs' multiple layers of for-cause protection deprive the President of his constitutional removal power and instead vest it in members of the MSPB, "who may or may not agree with the President's determination" regarding the removability of an NLRB ALJ, "and whom the President cannot remove simply because [the MSPB member] disagrees with him." *Id*. at 484. In other words, NLRB ALJs' multiple layers of for-cause protection restrict the President "in his ability to

---

[4] The Court "ha[d] no hesitation in concluding that . . . the [PCAOB] members [we]re inferior officers" because the SEC had the power to remove PCAOB members and had oversight authority over the agency. 561 U.S. at 510.

remove a principal officer, who is in turn restricted in his ability to remove an inferior officer." *Id*. This type of removal structure "contravenes the President's 'constitutional obligation to ensure the faithful execution of the laws'" by excessively insulating NLRB ALJs from Presidential oversight and regulation. *Id*.

### 7. *Jarkesy further establishes that NLRB ALJs are unconstitutionally insulated from removal.*

The dispute in *Jarkesy* arose when the SEC brought enforcement action against an individual it investigated and believed to have engaged in securities fraud. 34 F.4th at 450. The individual sought to enjoin the agency proceedings, claiming, among other things, that the SEC proceedings were defective because SEC ALJs are unconstitutionally insulated from removal. *Id*. After the district court and D.C. Circuit refused to issue an injunction, the enforcement proceeding continued, after the conclusion of which the individual filed a petition for review of the constitutional claims before this Court. *Id*. This Court's decision in *Jarkesy* conclusively establishes that La Grange's claim that NLRB ALJs are unconstitutionally insulated from removal will succeed.

In *Jarkesy*, this Court held that removal restrictions applicable to the SEC ALJs, which are nearly identical to the restrictions applicable to the NLRB's ALJs, were unconstitutional because they created "two layers of insulation imped[ing] the President's power to remove ALJs based on their exercise of the discretion granted to them." *Id*. at 464–65. Under 5 U.S.C. § 7521(a), "SEC ALJs may be removed by

the Commission 'only for good cause established and determined by the [MSPB] on the record after opportunity for hearing.'" *Id.* at 464. Further, "SEC Commissioners may only be removed by the President for good cause." *Id.* Because SEC ALJs are "'inferior officers' of an executive agency . . . they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Id.* (citing *Lucia*, 585 U.S. at 248–49). These "two layers of insulation" from removal unconstitutionally deprive the President of "the control necessary to ensure that the laws are faithfully executed." *Id.* at 464–65.

The NLRB's ALJs are insulated by removal restrictions that are indistinguishable from SEC ALJs'. NLRB ALJs, like SEC ALJs, are protected by "two layers of for-cause protection" that "stand in the President's way." *Id.* at 465. The same statutory provision shielding SEC ALJs from removal except "for good cause established and determined by the Merit Systems Protection Board" applies equally to NLRB ALJs. 5 U.S.C. § 7521. MSPB members' removal protections are identical, regardless of whether they are considering ALJs from the SEC, the NLRB, or any other covered administrative agency. *See* 5 U.S.C. § 1202 (providing that, regardless of context, "[a]ny member may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office"). Thus, NLRB ALJs are unconstitutionally insulated from removal by the same multiple layers of removal protections as SEC ALJs. *Jarkesy*, 34 F.4th at 464–65.

Also like SEC ALJs, NLRB ALJs are "inferior officers" that "exercise considerable power over administrative case records" and "may punish contemptuous conduct." *Id*. at 464; *WestRock Servs., Inc*., 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) (Board explaining that the Supreme Court's holding in *Lucia*, "[a]lthough . . . specific to SEC [ALJs] . . . supports a determination that Board [ALJs], like SEC [ALJs], are inferior officers"); 29 C.F.R. §§ 101.10, 102.35. NLRB ALJs also issue decisions that "automatically become the decision and order of the Board" in the event no party files exceptions. 29 C.F.R. §§ 101.11, 101.12(b), 102.45, 102.48(a). The NLRB effectively concedes that its ALJs are unconstitutionally insulated from removal in accordance with *Jarkesy*. The district court observed in the decision the Board appeals that the NLRB "conced[ed] *Jarkesy* 'likely decides this issues as far as the merits go'" in the injunction hearing and "offered no distinction between the removal protections at issue and those held to be unconstitutional in *Jarkesy*." ROA.24-40533.314–15.

The Board's half-hearted efforts to distinguish the powers of NLRB and SEC ALJs are unpersuasive. NLRB Br. at 39. Contrary to the Board's argument, NLRB ALJs have both the power to punish contemptuous conduct and issue decisions that have the ability to become final and binding. *See* 29 C.F.R. § 102.35(a)(6) (providing that NLRB ALJs may "exclude persons or counsel from the hearing for contemptuous conduct"); 29 C.F.R. § 102.48(a) (providing that ALJs' decisions

automatically become final and binding "[i]f no timely or proper exceptions are filed"). The Board even goes so far as to recognize the reality that "this Court's rule of orderliness precludes this panel from overruling [*Jarkesy*]." NLRB Br. at 40. Thus, the parties agree that this Court's *Jarkesy* decision requires finding that La Grange has shown a likelihood of success on the merits of its claim that the NLRB's ALJs are unconstitutionally insulated from removal.

**B.     NLRB Board Members are unconstitutionally insulated from removal.**

### *1.     The statutory role of NLRB Board Members*

NLRB Board Members are statutorily vested with significant executive authority. Board Members have exclusive authority over representation elections under the NLRA, including the determination of appropriate bargaining units, directing elections, and certifying election results. 29 U.S.C. §§ 153(b), 159. Board Members exercise this exclusive authority to interpret and enforce the NLRA's principle that "[e]mployees shall have the right to self-organization, to form, join or assist labor organizations . . . and shall also have the right to refrain from any or all of such activities" through their decisions to process or reject election petitions. 29 U.S.C. § 157. Likewise, Board Members are able to "prevent any person from engaging in any unfair labor practice," including through the power to authorize pursuit of injunctions in federal court. 29 U.S.C. § 160; *see also* 29 U.S.C. § 156 (explaining that Board Members have broad authority to "make, amend, and rescind

. . . such rules and regulations as may be necessary to carry out" their duties). Board Members also have the power to investigate alleged violations of the statute, issue subpoenas, and compel witness testimony. 29 U.S.C. § 161.

### 2. *NLRB Board Members' removal protections*

With the advice and consent of the Senate, the President appoints Board Members to staggered, five-year terms. 29 U.S.C. § 153(a). However, the NLRA provides that the President may only remove Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id*. In other words, the NLRA provides Board Members with statutory for-cause protections from the President's removal power.

### 3. *NLRB Board Members are unconstitutionally insulated from removal.*

As set forth above, the Constitution charges the President with the requirement of faithfully executing the laws and, critically, requires that the President retain the authority to remove executive officers. *See supra*, Argument, Section I(A)(3). Unlike the NLRB's ALJs, its Board Members are not inferior officers. Instead, they are principal officers who exercise substantial executive power. The default constitutional rule is that principal officers like the NLRB's Board Members must be removable at will by the President. *Seila L.*, 591 U.S. at 213 (explaining that the "power of appointing, overseeing, and controlling those who execute the laws . . . generally includes the ability to remove executive officials, for

it is only the authority that can remove such officials that they must fear and, in the performance of [their] functions, obey") (quoting 1 Annals of Cong. 463 (1789); *Bowsher v. Synar*, 478 U.S. 714, 726 (1986)) (internal quotations omitted).

The Board Members' for-cause removal protections violate Article II of the Constitution because they impede the President's ability to faithfully execute the laws and maintain "unrestricted removal power" over principal officers imbued with significant executive authority. *Seila L*, 591 U.S. at 215. The Supreme Court carved out only a narrow exception to the President's power to remove principal officers in *Humphrey's Executor*, which does not apply here.

> a.   *Humphrey's Executor does not apply because NLRB Board Members wield substantial executive authority.*

In *Humphrey's Executor*, the Court determined that Article II did not require unrestricted removal power for the President with respect to members of the Federal Trade Commission ("FTC") because the FTC did not exercise "executive" duties, but instead played a "quasi judicial and quasi legislative" role. 295 U.S. at 624. *Humphrey's Executor* has come to stand for the proposition that Congress may restrict the President's removal power only for multimember agencies that do not wield "substantial executive power." *See Seila L.*, 591 U.S. at 218. This exception to Article II represents "the outermost constitutional limit[] of permissible congressional restrictions on the President's removal power." *Id*.

Executive authority encompasses the power to execute the laws of the land. It includes deciding "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021). It also includes the power to interpret the law, which the Supreme Court has explained "is the very essence of 'execution' of the law." *Collins*, 594 U.S. at 254. Likewise, the power to promulgate regulations effectuating the goals of an agency falls within the purview of executive authority. *See, e.g., Seila L.*, 591 U.S. at 218 (noting that CFPB director is "hardly a mere legislative or judicial aid," in part, because she "possesses the authority to promulgate binding rules"). Both the NLRB and its Members regularly exercise these executive powers. *See supra*, Argument, Section I(A)(2).

The functions of the NLRB and its Members are "unquestionably" core executive functions and constitute the Board wielding substantial executive power. *Consumers' Rsch. v. CPSC*, 91 F.4th 342, 353 (5th. Cir. 2024); *see also Seila L.*, 591 U.S. at 225 (explaining that CFPB director's abilities to "issue final regulations, oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties" constitute exercises of executive power). The inquiry is then whether the NLRB's structure, combined with the substantial executive power it wields, "excessively insulate[s]" it from presidential oversight. *Collins v. Mnuchin*, 896 F.3d 640, 666–67 (5th Cir. 2018), *as*

*reinstated by* 938 F.3d 553, 587 (5th Cir. 2019) (en banc), *aff'd in part, vacated in part, rev'd in part sub nom. Collins*, 594 U.S. 220. The inescapable conclusion is that it does.

> b.     *Humphrey's Executor does not apply because the NLRB is not a body of experts.*

The Supreme Court "limited its holding" in *Humphrey's Executor* to "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 444 (5th Cir. 2022) (citing *Seila L.*, 591 U.S. at 216). In arguing that this Court should apply *Humphrey's Executor*, the NLRB assumes—without explanation—that the Board is a "body of experts."

However, Board Members are not experts in any technical or scientific field, but instead only purport to be experts of the Board's own rules. *See* Hiba Hafiz, *Economic Analysis of Labor Regulations*, 2017 Wis. L. Rev. 1115, 1128–34 (2017) (discussing the Board's lack of institutional expertise beyond its own doctrine due to statutory ban on use of economists and statisticians). Board Members cannot claim special expertise due to familiarity with their own agency's enabling statute, as "interpretation of the meaning of statutes . . . [i]s exclusively a judicial function." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024) (internal quotations omitted). The NLRB does not describe any other field or topic in which the Board Members possess expertise and cannot show that it is a body of experts.

      *c.*      *Humphrey's Executor does not apply because the NLRB is not an independent agency*.

In carving out its narrow exception to the President's general removal power, the *Humphrey's Executor* Court rested its determination on the independent nature of the FTC and specifically limited its holding "to officers of the kind here under consideration." 295 U.S. at 625, 632. The Court emphasized Congress' intent for the FTC to be "independent of executive authority" and pointed to several key considerations supporting this intent, including that the FTC was to be nonpartisan and "free from 'political domination or control.'" *Id*. at 625. The NLRB, however, does not align with the view of independent agencies set forth in *Humphrey's Executor*.

The NLRB is not free from executive control or the influence of partisan politics. The President exercises significant control over the Board, beginning with the contentious nomination and confirmation process, during which "various administrations have tried to appoint Board members with relatively apparent pro-labor or pro-employer attitudes." Matthew M. Bodah & Martin R. Schneider, *Politics, Ideology, and Adjudication: The German Federal Labor Court and the U.S. National Labor Relations Board*, 36 Comp. Lab. L. & Pol'y J. 1, 5 (2014). This practice has predictably led to Board Members acting in a manner consistent with the political background for which their appointment was sought. Walker J. Gray, *"Dependent" Independent Agencies: How Humphrey's Executor Envisioned*

*Independent Agencies and the NLRB's Inconsistency with This Vision*, 53 Cumb. L. Rev. 77, 90 (2023) (explaining that "[a]n analysis of 1,250 unfair labor practice charges between 1955 and 1975 found that 'the politics of an appointing president and a Board member's own political affiliation were significant factors in whether a member voted for or against the union's position in a case'"). One study, "based on a sample of 530 Board cases from 1957 to 1986, found that the politics of Congress also influenced Board decisions." *Id.* (citing William N. Cooke & Frederick H. Gautschi, *Political Bias in NLRB Unfair Labor Practice Decisions*, 35 Indus. & Lab. Rel. Rev. 539 (1982)).

Though the President cannot remove Board Members without cause, the executive exercises significant control over Board decisions via partisan political influence. Further, the General Counsel does not have any removal protections, which has resulted in the "modern trend" of a new General Counsel being installed "at the beginning of every administration." *Id.* at 96. For these reasons, the NLRB substantially deviates from the type of independent agency contemplated in *Humphrey's Executor* and to which the decision was intended to be limited to.

> d.    *Extending Humphrey's Executor to the NLRB would contradict this Court's precedent.*

The NLRB argues that this Court should improperly extend the narrow *Humphrey's Executor* exception to apply to the NLRB. NLRB Br. at 40–43. But this argument completely neglects this Court's explanation in *Exela* that *Humphrey's*

*Executor* "upheld removal protections for the Commissioners of the [FTC] because the Commission exercised 'no part of the executive power,' but rather, was 'an administrative body' that performed 'specified duties as a legislative or as a judicial aid.'" 32 F.4th at 444. This Court correctly observed in *Exela* that the NLRB's General Counsel "is simply not an 'officer of the kind' considered by the Court in *Humphrey's Executor*" because her prosecutorial powers are "core to the executive function." *Id.*[5] Board Members exercise those same core executive functions when they authorize the General Counsel to seek injunctive relief under Section 10(j). The Board fails to offer any meaningful distinction that reconciles the fact that the General Counsel cannot be insulated by for-cause protections while Board Members can.

The Board's reliance on *Consumers' Research* and *Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023), is also misplaced. Both *Consumers' Research* and *Illumina* examined agencies with structures distinct from the NLRB. The NLRB maintains a unique structure that is far from a "mirror image" of the agencies examined in either of those cases. *Consumers' Rsch.*, 91 F.4th at 346.

---

[5] The FTC Commissioners at issue in *Humphrey's Executor* did not exercise such prosecutorial powers. The FTC Act originally required the FTC to go through the Attorney General to seek mandamus relief in federal court. Act of Sept. 26, 1914, ch. 311, § 9, 38 Stat. 717, 722 (codified as amended at 15 U.S.C. § 49). Congress later amended the statute to authorize the FTC to seek injunctive relief in federal court in false advertising cases. Act of Mar. 21, 1938, ch. 49, § 4, 52 Stat. 111, 115 (codified as amended at 15 U.S.C. § 53).

Unlike the statutes creating the CPSC and the FTC, the agencies examined in *Consumers' Research* and *Illumina*, the NLRA does not limit the number of Board Members from the President's political party that may sit on the Board at one time. *Compare* 15 U.S.C. §2053(c) ("Not more than three of the [five] Commissioners shall be affiliated with the same political party.") and 15 U.S.C. §41 ("Not more than three of the Commissioners shall be members of the same political party") *with* 29 U.S.C. §153(a) (creating the NLRB without any requirement of partisan balancing). Because the NLRB's Members sit for staggered five-year terms, Congress left open the possibility that the President could appoint at least four politically-aligned Members. This is structurally distinct from the partisan balancing required for the CPSC and FTC.[6]

The NLRB is additionally distinct from the agency structure considered in *Humphrey's Executor* due to the unique position of the NLRB General Counsel. 29 U.S.C. § 153(d). While Congress bifurcated the executive functions performed by the NLRB and the General Counsel, it left with the NLRB certain prosecutorial functions, including the authority to pursue Section 10(j) injunctions. *Muffley ex rel. NLRB v. Spartan Mining Co.*, 570 F.3d 534, 540 (4th Cir. 2009) (finding "Congress vested the power to seek § 10(j) relief with the Board" and that the ability to seek

---

[6] Critically, the removal protections afforded to Board Members also create the possibility that a President could be stuck with Members openly hostile to the President's executive goals, obstructing the President's ability to execute the laws.

such relief is "clearly prosecutorial"). The Board also exercises the power to order penalties not sought by the General Counsel. *Noah's Ark Processors, LLC*, 372 N.L.R.B. No. 80, at *4. The General Counsel enjoys no removal protections in light of the substantial executive power she wields. *Exela*, 32 F.4th at 442.

The Board also incorrectly argues that La Grange's "position hinges on the implicit assertion that *Seila Law* . . . radically upended decades of precedent and practice by supplanting *Humphrey's Executor*." NLRB Br. at 41. In both *Seila Law* and *Free Enterprise Fund*, the Supreme Court declined to extend *Humphrey's Executor* to "new situation[s]." *Seila L.*, 591 U.S. at 220; *Free Enter. Fund*, 561 U.S. at 483–84. Nevertheless, that is exactly what the NLRB seeks here—the extension of *Humphrey's Executor* to a "new situation." This Court should refuse to do so.

### 4. *The NLRB is wrong about "causal harm" being required.*

The NLRB argues that *Collins* and *Community Financial Services Ass'n of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"), require La Grange to show that unconstitutional removal provisions for NLRB ALJs "actually prejudiced the President's control of the administrative proceeding[.]" NLRB Br. at 28. However, *Collins* and *CFSA* do not apply to this case.

As the district court recognized in its decision, this case is distinct from "most removal-restriction cases," which involve "a plaintiff seek[ing] to invalidate an action that an unconstitutionally insulated official has already taken." ROA.24-

40533.316. The litigants in both *Collins* and *CFSA* raised removal-restriction challenges seeking to invalidate past administrative actions. *See Collins*, 594 U.S. at 257; *CFSA*, 51 F.4th at 631–32. In contrast, La Grange is not asking this Court to "rewind" past actions that the NLRB has already taken. *Collins*, 594 U.S. at 274 (Kagan, J. concurring); *see CFSA*, 51 F.4th at 632 (asking whether plaintiff could show a nexus between the President's inability to remove an unconstitutionally insulated agency official "and the challenged actions *taken* by the insulated actor") (emphasis added). La Grange is simply asking this Court to halt a constitutionally infirm proceeding before the damage may be done.

La Grange's claims are thus fundamentally different than typical removal challenges, including those brought in *Collins* and *CFSA*, because La Grange is not seeking to avoid the consequences of a decision already rendered. *See Axon*, 598 U.S. at 192 (distinguishing between challenges to an agency's "power to proceed at all" and challenges to "actions taken in the agency proceedings"). The Supreme Court has explained that being subjected "to unconstitutional agency authority—a proceeding by an unaccountable ALJ . . . is a here-and-now injury . . . [that] is impossible to remedy once the proceeding is over." *Id*. at 191 (internal quotations omitted). This is the precise injury La Grange seeks to avoid.

The Board's focus on this Court's explanation in *CFSA* that *Collins* "did not rest on a distinction between prospective and retrospective relief" misses the point.

NLRB Br. at 32. The plaintiffs in *Collins* sought relief from past conduct; specifically, "an order setting aside" the actions taken by an unconstitutional insulated representative. *Collins*, 594 U.S. at 257. La Grange's challenge in this case to the Board's "power to proceed at all" is neither seeking to prospectively invalidate nor retrospectively recover for past "actions taken in the agency proceedings." *Axon*, 598 U.S. at 192.

This Court's en banc decision in *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc), *aff'd by Axon*, 598 U.S. 175, further demonstrates that *Collins* and *CFSA* are not applicable here. In *Cochran*, this Court explained that *Collins* did not impact its conclusion because the plaintiff "d[id] not seek to 'void' the acts of any . . . official." 20 F.4th at 210, n.16. Rather, the plaintiff in *Collins*—like La Grange here—"s[ought] an administrative adjudication untainted by separation-of-powers violations." *Id*. The Supreme Court's decision in *Axon*, in which it affirmed *Cochran*, articulates that the very harm La Grange alleges—being subjected to a constitutionally defective proceeding before an unaccountable ALJ—is both legally cognizable and "impossible to remedy once the proceeding is over." 598 U.S. at 191.

Rather than engage with the substance of *Cochran* and *Axon*, the NLRB suggests limiting the scope of their reasoning to questions of subject-matter jurisdiction. NLRB Br. at 34, 37. However, this limitation makes little sense. This Court's decision in *Cochran* arose in the context of a request for a preliminary

injunction, as did the other consolidated case the Supreme Court considered in *Axon*. *See Axon Enter. Inc. v. FTC,* 452 F. Supp. 3d 882, 886 (D. Ariz. 2020); *Cochran v. SEC*, No. 4:19-CV-066-A, 2019 WL 1359252, at *1 (N.D. Tex. Mar. 25, 2019). Moreover, both *Cochran* and *Axon* address the specific types of harm at issue in this case. *Axon*, 598 U.S. at 191; *Cochran*, 20 F.4th at 212 (explaining that "withholding judicial consideration would injure [the claimant] by forcing her to litigate before an ALJ who is unconstitutionally insulated from presidential control.").

In a similar attempt to sidestep *Cochran*, the NLRB turns to extra-circuit precedent that cannot be squared with this Court's decision. NLRB Br. at 36 (citing *YAPP USA Auto. Sys., Inc. v. NLRB*., No. 24-1754, 2024 WL 4489598, at *2 (6th Cir. Oct. 13, 2024); *Kerwin v. Trinity Health Grand Haven Hosp*., No. 1:24-cv-445, slip op. at 11 (W.D. Mich. Oct. 25, 2024)). Both *YAPP* and *Kerwin* rely on the application of *Calcutt v. FDIC*, 37 F.4th 293 (6th Cir. 2022), which imposes a requirement that a party challenging the constitutionality of an agency's removal protection scheme must "show that the removal restriction *specifically* impacted the agency actions of which they complain[]." *YAPP*, 2024 WL 4489598, at * 2; *Kerwin*, 2024 WL 4594709, at *4–5. This requirement is inconsistent with this Court's decision in *Cochran*, and the Board fails to cite any precedent from this Court supporting such a requirement. The Board also cites to *Cortes v. NLRB*., No. CV 23-2954, 2024 WL 1555877, at *4 (D.D.C. Apr. 10, 2024), which held that plaintiffs

could not establish standing to challenge the constitutionality of the NLRB's structure because the plaintiffs "[we]re not presently involved in proceedings before the NLRB" when they brought their claims. Those circumstances are wholly distinct from this and each of the relevant cases, each of which involve entities either presently or previously involved in administrative proceedings before the Board.

Even if *Collins* were applicable to this case, the district court correctly observed that its holding is not at odds with *Collins*' causal-harm requirement. Rather, as the court explained, "[f]or removal-restriction claims that seek relief *before* an insulated actor acts . . . *Collins*'s causal-harm requirement . . . is readily satisfied." ROA.24-40533.318. In the absence of injunctive relief, La Grange would be harmed by "having to participate in a constitutionally defective administrative process[,] [a]nd it's the removal provisions that create the constitutional defect." ROA.24-40533.318. The Board's argument that "every plaintiff in a case of this nature" would meet this standard misses the point. NLRB Br. at 33. The district court emphasized that the standard it set forth narrowly applies to claimants challenging removal-restriction claims who seek relief prior to agency action. The fact that other claimants may satisfy this standard when faced with the harm of being forced to participate in constitutionally defective administrative processes does not constitute a legitimate objection to halting the constitutional violations.

**C. La Grange will suffer immediate and irreparable harm absent injunctive relief.**

La Grange stands to be "subjected to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 598 U.S. at 191. This is "a here-and-now injury . . . [that] is impossible to remedy once the proceeding is over." *Id.* (citing *Seila L.*, 591 U.S. at 212) (internal quotations omitted). Absent injunctive relief, La Grange would be forced to undergo a "proceeding that . . . cannot be undone," at which point "[j]udicial review of [La Grange's] structural constitutional claims would come too late to be meaningful." *Id.*

A constitutional deprivation "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *BST Holdings,* 17 F.4th at 618 (5th Cir. 2021); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("It is well settled that the loss of [constitutional] freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction.").[7] The NLRB's unconstitutional structure renders the administrative

_____

[7] The NLRB attempts to distinguish these relevant cases by claiming they are only applicable to constitutional deprivations "involving First Amendment rights or personal privacy interests." NLRB Br. at 50. However, the NLRB does not offer any basis for distinguishing between First Amendment and other constitutional violations in the context of irreparable harm analysis. This Court's precedent broadly observes that "an injury is irreparable only 'if it cannot be undone through monetary remedies.'" *Dennis Melancon, Inc.*, 703 F.3d at 279. The NLRB fails to explain how La Grange's here-and-now injury could be remedied after the proceedings close, let alone through monetary relief. *Axon*, 598 U.S. at 191. Indeed, the NLRB's cited authority supports La Grange by recognizing that injunctive relief is appropriate when "'required to preserve the status quo' while litigation is pending" and when the movant is suffering "harms beyond ones that can be cured after final judgment." NLRB Br. at 50 (citing *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) (citation omitted)).

proceedings pending against La Grange illegitimate. The irreparable harm La Grange articulates is not receiving an adverse decision from the NLRB in the administrative proceeding. La Grange's claim is "not about that order; indeed, [La Grange] would have the same claim [if] it *won* before the agency." *Axon*, 598 U.S. at 191 (emphasis in original). Instead, La Grange's claim is about being forced to endure an "illegitimate proceeding, led by an illegitimate decisionmaker." *Id*.

While this "harm may sound a bit abstract," the Supreme Court "has made clear that it is a 'here-and-now-injury.'" *Id*. (citing *Seila L.*, 591 U.S. at 212). Significantly, if the NLRB proceedings are permitted to continue, the courts will be unable to redress the harm. *Id*. ("A proceeding that has already happened cannot be undone."); *Cochran*, 20 F.4th at 212 ("withholding judicial consideration would injure [the claimant] by forcing her to litigate before an ALJ who is unconstitutionally insulated from presidential control"). La Grange's claims thus seek to prevent this inevitable and irreparable harm before the damage occurs.

None of the cases the NLRB cites to support its argument that La Grange has not suffered irreparable harm are persuasive because they all apply *Collins* in circumstances where the claimants did not seek to void agency actions. *See* NLRB Br. at 52; *Leachco, Inc. v. CPSC*, 103 F.4th 748, 756–58 (10th Cir. 2024); *YAPP*,

_____

That is precisely what is happening here—absent an injunction, the judicial system will be powerless to provide relief to La Grange for the harm of undergoing an unconstitutionally structured proceeding.

2024 WL 4489598, at *2–3; *Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, No. 24-09016, 2024 WL 4563789, at *4–5 (D.N.J. Oct. 24, 2024); *Ares Collective Group, LLC v. NLRB*, No.CV-24-00517-TUC-SHR, slip op. at 3–4 (D. Ariz. Oct. 25, 2024). As discussed above, this Court's en banc decision in *Cochran* forecloses this application of *Collins*.

**D.     The balance of equities weigh in La Grange's favor, and an injunction is in the public's interest.**

The balance of equities tips firmly in La Grange's favor. Where "the Government is the opposing party," the "harm to the opposing party and the public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). La Grange is likely to succeed on the merits of it claims. Absent injunctive relief, La Grange will be subjected to constitutionally defective administrative proceedings before an unaccountable ALJ. Conversely, granting La Grange injunctive relief would do the NLRB "no harm whatsoever." *BST Holdings*, 17 F.4th at 618. "Any interest [the NLRB] may claim in enforcing an unlawful (and likely unconstitutional)" proceeding is "illegitimate." *Id.*; *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."); *Lujan v. U.S. Dep't of Educ.*, 664 F. Supp. 3d 701, 722 (W.D. Tex. 2023) ("Finally, and most importantly, the Department has no interest in enforcing a regulation that likely conflicts with Congress's unambiguous statutory mandate.").

The Board argues that the public's interest in the enforcement of the NLRA outweighs La Grange's interest in avoiding subjection to constitutionally illegitimate administrative proceedings. NLRB Br. at 60–61. This argument ignores the public interest that injunctive relief would serve due to the constitutional violations at stake. *BST Holdings*, 17 F.4th at 618. "The public interest is . . . served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions—even, or perhaps *particularly*, when those decisions frustrate government officials." *Id*. at 618–19 (emphasis in original). Further, the NLRB's argument neglects to consider that "any abstract 'harm' a stay might cause the [NLRB] pales in comparison and importance to the harms the absence of a stay threatens to cause countless individuals and companies" should the Board be permitted to subject them to constitutionally defective proceedings. *BST Holdings*, 17 F.4th at 618.

The harms to the parties at issue in the precedent the Board cites to support this argument are wholly distinct from the Board's alleged harms at issue in this case. In *Texas Alliance for Retired Americans v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020), this Court emphasized that staying an injunction granted by the district court—which would have prohibited the enforcement of an election law only 18 days before the election was set to occur—would irreparably harm the State because it could not rerun the election, applying the enjoined election law in the second

instance. This Court similarly held that an injunction imposing onerous health and safety requirements in state prisons, which it characterized as constituting an "administrative nightmare" for prison system officials, irreparably harmed the Texas Department of Criminal Justice due to the significant burdens the requirements posed "in terms of time, expense, and administrative red tape." *See Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020).

This Court granting La Grange injunctive relief would not impose any comparable harms on the NLRB. The Board would not be precluded from enforcing any relevant statutes or ensuring employers comply with their obligations under the NLRA, as the Board suggests. NRLB Br. at 63–64. Instead, its enforcement efforts would simply be delayed to ensure that the proceedings and the Board's structure comply with applicable constitutional safeguards. Likewise, the Board would not be subjected to significant additional burdens in seeking to enforce the provisions of the NLRA. It would simply be forced to do so in a manner consistent with the Constitution, which itself serves the public interest. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) ("[T]he public is served when the law is followed.").

Even if the NLRB were able to demonstrate a strong showing of irreparable harm to its or the public's interest, which it cannot, the precedent the Board cites shows that this would be insufficient in light of La Grange's likelihood of success

on the merits and irreparable harm showing. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (explaining that, where both parties "made a strong showing that their interests would be harmed by staying the injunction, given the State's likely success on the merits, [appellee's showing of harm] is not enough, standing alone, to outweigh the other factors").

The Board characterizes La Grange's interest in seeking to avoid suffering the irreparable constitutional harm it would suffer in the absence of injunctive relief as "wholly abstract and hypothetical." NLRB Br. at 65. As set forth above, the Supreme Court has explained in clear terms that the precise injury La Grange stands to suffer, while it "may sound a bit abstract . . . is a here-and-now injury . . . [that] is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191. There is no public interest in having an increasingly expansive Executive Branch that nonetheless "slip[s] from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499. A preliminary injunction would merely require the NLRB to stay the underlying administrative proceeding while the courts decide this case. While La Grange may suffer constitutional deprivation absent relief, the Board does not stand to incur any significant harm.

## II. The Norris-LaGuardia act does not apply.

For the first time in this case, the NLRB argues that the Norris La-Guardia Act "jurisdictionally bar[s]" the courts from issuing an injunction in this lawsuit. NLRB Br. at 18. The Norris-LaGuardia Act, however, is inapplicable to this case.

The Norris-LaGuardia Act regulates injunctions against strikes, picketing, and boycotts by labor groups and "expresses a basic policy against the injunction of activities of labor unions." *Chicago & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 581 (1971). Specifically, the terms of the statute limit its application to cases that "involve or . . . grow out of a labor dispute." 29 U.S.C. § 113. The act provides that "[a] case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees." *Id*. This lawsuit between La Grange and the NLRB and its officials concerning La Grange's purely legal challenges to the constitutionality of the NLRB's structure does not fit within the statutory framework.

The NLRB insists that "[i]t is of no import that [La Grange's] quarrel in the action[] below is nominally with the government and its procedures rather than an employee or union" because "Norris-LaGuardia may not be construed so narrowly." NLRB Br. at 20. However, the precedent the Board cites to justify this claim simply

held that the term "labor dispute" should not be construed so narrowly so as to exclude the situation considered in that case, in which an employer sought an injunction against a labor union's work stoppage because it was politically motivated. *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712–15 (1982). In so holding, the Court explained that Congress' intent in enacting the Norris-LaGuardia Act was "to remedy the growing tendency of federal courts to enjoin strikes by narrowly construing the Clayton Act's labor exemption from the Sherman Act's prohibition against conspiracies to restrain trade." *Id*. at 708. Contrary to the Board's suggestion, *Jacksonville Bulk Terminals* does not instruct that the Norris-LaGuardia Act should be interpreted so broadly as to prohibit courts from entering injunctions in circumstances not at all contemplated by the act.

The Board further argues that this case "plainly falls within the NLGA's capacious definition of 'labor dispute'" because "[La Grange] is alleged to have taken adverse employment actions in response to an employee's complaints about hazardous working conditions and filing a charge with the NLRB." NLRB Br. at 19. To read this situation into the statutory framework is an untenable interpretation of Norris-LaGuardia. The "critical element in determining whether the provisions of the Norris-LaGuardia Act apply is whether the employer-employee relationship [is] the matrix of the controversy." *Jacksonville Bulk Terminals*, 457 U.S. at 712–13 (citing *Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 147 (1942)).

The substance of the allegations brought by the NLRB against La Grange in the underlying administrative proceeding are immaterial to this action, which concerns only La Grange's claims regarding the NLRB's structural constitutional defects. The employer-employee relationship between La Grange and the Charging Party in the underlying administrative action does not form any part of the controversy at issue in this lawsuit, much less is it the matrix of the controversy. Accordingly, the claims in this action do not involve or grow out of a labor dispute. Instead, the claims grow out of La Grange's concerns regarding the constitutional soundness of the NLRB's structure and administrative proceedings. Neither the terms and conditions of employment nor the representation of La Grange employees are pertinent to this Court's analysis of the purely legal issues of constitutional law La Grange presents. *See In re Cont'l Airlines, Inc.*, 484 F.3d 173, 184 (3d Cir. 2007) (holding that no "labor dispute" existed where the case did not involve controversy regarding "terms and conditions of employment" or representation of employees).

The NLRB distorts La Grange's motivation for bringing these claims in a self-serving attempt to frame the case as involving or growing out of a labor dispute. NLRB Br. at 22. La Grange asserted its claims in this lawsuit to avoid being subjected to proceedings before an unconstitutionally structured administrative agency, not to "relieve itself of particular NLRA obligations." *Id*. The Board's reference to *United Steelworkers v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979), is

thus misplaced and unpersuasive. There, this Court held that the case grew out of a labor dispute because "the only reason court aid was sought through replevin was [a] strike" and because "the injunction was issued [by the district court] for the precise purpose of negating the effect of the strike and the picket line." *Id.* at 410. No such concerns are present in this case. As set forth above, La Grange sought judicial intervention to avoid enduring constitutional deprivations. The issuance of La Grange's requested relief would not be for the purpose or have the effect of negating any striking or picketing activities.

The NLRB curiously argues that this Court is also barred from granting La Grange injunctive relief because of its alleged "refusal to exhaust [the] 'administrative avenue'" of "the NLRB's unfair labor practice proceedings" as a means to resolve the underlying controversy. NLRB Br. at 23. The precedent the Board relies on for this argument is inapposite because the party seeking an injunction in that case did not challenge the constitutionality of the Railway Labor Act proceedings the court held that it was required to exhaust. *See BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers—Transp. Div.*, 973 F.3d 326 (5th Cir. 2020). The Board does not provide any additional support for this argument, which is nonsensical. If this argument were accepted, any employer seeking an injunction to avoid being subjected to unconstitutional administrative proceedings

would be required, as a threshold matter, to voluntarily submit to the constitutionally defective proceedings complained of.

## III. The potential remedy of severance does not render preliminary injunctive relief unavailable.

The NLRB argues that injunctive relief is unavailable to La Grange in this case because this Court could sever the "offending portions" of any statutes concerning ALJs' removal protections should it hold that such protections are unconstitutional. NLRB Br. at 54–59. But this is premature. It is only appropriate for courts to consider severability when determining a proper final remedy. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm"); *ABM Indus. Groups, LLC v. United States DOL*, No. CV H-24-3353, 2024 WL 4642962, at *6 (S.D. Tex. Oct. 30, 2024) (explaining that "there is no way for the court to sever [potentially unconstitutional] provisions before a final judgment").

A preliminary injunction is not intended to fashion permanent relief, but rather preserve the status quo and protect the Court's ability to later provide meaningful permanent relief. *See Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits

final relief to be fashioned."); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985) ("The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

The district court granted La Grange's requested preliminary injunction because the NLRB's requested "remedy" of severance "would not provide La Grange any relief from the impending harm it is set to experience" in connection with the constitutionally defective administrative proceedings "because such a declaration would not take place until final judgment." ROA.24-40533.319. The court correctly observed that, "while severing the removal provisions may eventually be the proper remedy on the merits, its potential availability has no bearing on La Grange's right to preliminary relief." ROA.24-40533.319; *Free Enter. Fund*, 561 U.S. at 508–10, 513 (concluding that "unconstitutional tenure provisions [we]re severable" but the petitioners were "entitled to declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive."). A district court within this Circuit articulated the principle clearly when confronted with an identical request:

> If the court does not enjoin the administrative proceeding, it is likely to conclude before the validity of the ALJ's removal restrictions is fully resolved. Even if those restrictions are ultimately ruled to be unconstitutional and severed, Plaintiff's injury—being subject to the

ALJ proceeding while the ALJ is improperly insulated—would have occurred and could not be undone. Severability therefore cannot be substituted for a preliminary injunction in this case.

*ABM Indus. Groups*, 2024 WL 4642962, at *6.

The NLRB's references to *Seila Law* and *Free Enterprise Fund* underscore this point. While both cases involved the Court severing unconstitutional removal protections, the Court did so only after it made a final determination regarding the protections' constitutionality on the merits. *Seila L.*, 591 U.S. at 232 ("Having concluded that the CFPB's leadership by a single independent Director violates the separation of powers, we *now* turn to the appropriate remedy.") (emphasis added); *Free Enter. Fund*, 561 U.S. at 508–10. Neither case involved the Court making a severability determination at the preliminary injunction stage or at any point prior to rendering its final merits determination.

The NLRB's citation to *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020), misses the point for the same reason. NLRB Br. at 54. There, as in *Seila Law* and *Free Enterprise Fund*, the Court engaged in severability analysis only after rendering a final determination on the constitutionality of the legislation at issue. *Barr*, 591 U.S. at 621; *see also United States v. Arthrex, Inc.*, 594 U.S. 1, 23–24 (2021) (turning to the issue of severability only after rendering final determination that removal restrictions violated Appointments Clause); *New York v. United States*, 505 U.S. 144, 186 (1992) (analyzing severability only after the court "determined

that the . . . provision exceed[ed] the powers of Congress"); Slade Mendenhall & Brian Underwood, *To Sever or Not to Sever: Mixed Guidance from the Roberts Court*, 69 Drake L. Rev. 273, 277 (2021) ("Ultimately, though, questions of severability only arise after a court is persuaded that some statutory provision is constitutionally invalid."). The Supreme Court has repeatedly demonstrated that the proper time to consider the availability of severance as a remedy is after a final merits determination has been rendered, and the NLRB has provided no guidance compelling a departure from the Court's practice.

Additionally, it is not clear that severance would be appropriate, even as a final remedy. The Board simply assumes and presents to this Court that the removal restrictions "are readily severable" (NLRB Br. at 59) despite wholly sidestepping the issue. NLRB Br. at 55 n.26 ("It is not necessary for this Court to decide now precisely how severance would operate at final judgment to reverse here."). However, as the district court pointed out in *SpaceX*, "[t]he NLRB ALJ conducting the administrative proceeding . . . has three sets of removal protections, and it is not clear which, if any, Congress would be willing to give up." *Space Expl. Technolo-Gies Corp. v. NLRB*., No. W-24-CV-00203-ADA, 2024 WL 3512082, at *5 (W.D. Tex. July 23, 2024).

Not only do NLRB ALJs have multiple removal protections, but each of those protections reflect legislative choices made to ensure ALJs' political independence.

*Lucia*, 585 U.S. at 260 (Breyer, J., concurring in part) (explaining that ALJs' removal protections are "a central part of the [Administrative Procedure] Act's overall scheme" designed specifically to provide ALJs "independence and tenure" and to "ameliorate the perceived evils of commingling adjudicative and prosecutorial functions in agencies") (internal quotations omitted); 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court"); NLRB, *Legislative History of the National Labor Relations Act of 1935*, at 3255 (1949) (explaining that Congress designed the Board to be an "independent agency" insulated from presidential control). Congress did not accidentally provide ALJs with multiple layers of removal protections. Rather, the legislative history of the APA demonstrates that Congress specifically provided ALJs with these removal protections to address concerns that the hearing examiners agencies employed prior to the creation of ALJs lacked independence from political influence and control. *See supra*, Argument, Section I(A)(1).

There is no way for this Court to determine which of the removal protections, if any, Congress would have deemed appropriate to sever in order to remedy the constitutional defects with the NLRB's structure. To do so in the absence of clearly expressed congressional intent would create a significant risk of circumventing the legislature. *See Free Enter. Fund*, 561 U.S. at 510 (explaining that the "editorial

freedom" to remedy the statutory frameworks for unconstitutional removal provisions "belongs to the Legislature, not the Judiciary.").

Moreover, in light of Congress' clear intent to design ALJs' removal protections in a manner that would insulate them from political control and ensure their abilities to decide cases fairly and impartially, severing the removal restriction provisions would impermissibly contravene the Legislature's intent. *Id*. at 509 (explaining that the Court must "sustain" a statute's "remaining provisions" "'[u]nless it is evident that the Legislature would not have enacted those provisions . . . independently of that which is [invalid].'") (internal citation omitted). In *Free Enterprise Fund*, the Court explained that favoring severance seemed clear in that instance because "nothing in the statute's text or historical context ma[de] it 'evident' that Congress, faced with the limitations imposed by the Constitution, would have preferred no [PCAOB] at all to a [PCAOB] whose members are removable at will." *Id*. Here, however, the historical context raises significant questions as to whether Congress would have enacted the statutory framework creating ALJs in the absence of the unconstitutional removal protections.

Severing the unconstitutional removal protections would defy Congressional intent and unconstitutionally "substitute the judicial for the legislative department of the government." *United States v. Reese*, 92 U.S. 214, 221 (1875); *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006) ("the touchstone

for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'"). This Court should "restrain [itself] from 'rewrit[ing] [the] law to conform it to constitutional requirements.'" *Ayotte*, 546 U.S. at 329 (quoting *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 387 (1988)). Where, as here, discretion and complex line-drawing would be required to salvage a statute containing unconstitutional provisions, courts risk undertaking a "far more serious invasion of the legislative domain." *Id*. at 330 (quoting *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 479 n.26 (1995)). This Court should not engage in such an invasion, particularly at this premature stage in the absence of a final determination on the merits of the constitutional claims at issue.

Given the complexities and uncertainty regarding the severability issue, the district court did not abuse its discretion in ordering preliminary injunctive relief to maintain the status quo until the courts have are able to determine the appropriate final remedy. At that point, but not sooner, it may become appropriate to address how and whether the unconstitutional removal protections may be severed.

## CONCLUSION

For the foregoing reasons, La Grange respectfully requests that this Court affirm the district court's decision to grant La Grange's motion for a preliminary injunction.

Respectfully submitted,

s/ *Amber M. Rogers*

Amber M. Rogers
HUNTON ANDREWS KURTH LLP
TX State Bar No. 24056224
arogers@huntonak.com
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: 214-979-3000

Keenan Judge
HUNTON ANDREWS KURTH LLP
kjudge@huntonak.com
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: 214-695-9142

*Counsel for Energy Transfer LP and La Grange Acquisition, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, I electronically filed this brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system. I further certify that Counsel for Appellants have been served by email at the addresses listed below:

| Tyler Wiese | David Boehm |
|---|---|
| Tyler.wiese@nlrb.gov | David.boehm@nlrb.gov |
| Michael Dale | Grace Pezzella |
| Michael.dale@nlrb.gov | Grace.pezzella@nlrb.gov |
| Christine Flack, | Paul Thomas |
| Christine.flack@nlrb.gov | Paul.thomas@nlrb.gov |

*s/ Amber M. Rogers*
Amber M. Rogers
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, and that it complies with the type-volume limitations of Rule 32(a)(7)(B), because it contains 12,867 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

*s/ Amber M. Rogers*
Amber M. Rogers
*Counsel for Plaintiffs-Appellees*

117007.0000017 DMS 309122260v16